**IN THE UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF KENTUCKY AT PADUCAH**

| | |
|---|---|
| IN RE:<br><br>JOSEPH M WINCHESTER<br>TAMARA L WINCHESTER<br><br>Debtors. | CASE NO. 12-50676-thf<br><br>CHAPTER 13<br><br>JUDGE Thomas H. Fulton |

## MOTION FOR RELIEF FROM AUTOMATIC STAY

Now comes Selene Finance LP, claim #9 filed as Bank of America, N.A. ("Movant") and, through counsel, moves pursuant to 11 U.S.C. Section 362 for an Order terminating the automatic stay with respect to certain property owned by the Debtors in which Movant has a security interest. In support of this Motion, Movant states as follows:

1. On July 30, 2012, Joseph M Winchester and Tamara L Winchester ("Debtors") filed a petition for relief under Chapter 13 of the Bankruptcy Code.

2. Prior to the filing of the petition, Movant was granted a security interest in certain real property owned by the Debtors. The Mortgage Lien is in the real property located at 815 Bagwell Blvd, Murray, KY 42071 ("Real Property").The Mortgage was recorded with the Calloway County Recorder's Office on April 25, 2008.

3. Except with respect to the real estate taxes and assessments, the Mortgage Lien is the first lien in the Real Property. Upon information and belief, there are no other lienholders with respect to the Real Property.

4. Since the filing of the petition, Debtors have not made payments to Movant in accordance with the Note secured by the Mortgage and the Chapter 13 Plan. Debtors have not made any payments due for the months of September 1, 2013 through July 1, 2016.

5. As of July 5, 2016, the Debtors are indebted to the Movant in the principal amount of $91,180.35, plus interest, late fees, expenses and other charges.

6. Movant contends that the obligations owed to Movant are greater than the value of the collateral securing the obligation and, accordingly, that Debtors have no equity in the Real Property in which Movant has a security interest.

7. Additionally, Movant contends that the Debtors are unable to make adequate protection payments, have failed to make payments in accordance with the Chapter 13 plan and, therefore, Movant is entitled to relief from the automatic stay.

THEREFORE, Movant requests that this Court terminate the Automatic Stay and enable Movant to enforce its state law remedies with respect to the property located at 815 Bagwell Blvd, Murray, KY 42071.

Respectfully submitted,

/s/ Martha R. Spaner
Martha R. Spaner (93596(KY))
Reisenfeld & Associates, LPA-LLC
Attorney for Movant
3962 Red Bank Road
Cincinnati, OH 45227
voice: (513) 322-7000
facsimile: (513) 322-7099
e-mail: kybk@rslegal.com

**NOTICE PURSUANT TO LOCAL BANKRUPTCY RULE 4001-1(c)**

PLEASE TAKE NOTICE THAT any responsive pleading filing to or memorandum in connection with Selene Finance LP's Motion for Relief From Stay filed on July 18, 2016, shall be filed within fourteen (14) days from the service of such motion unless otherwise ordered by the Court. Failure to file a response and accompanying memorandum on a timely basis may be cause for the Court to grant the Motion as filed without further notice. Any response to the Motion shall state with particularity the reasons that the Motion is opposed and, if appropriate, make a specific offer of adequate protection.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing has been served this 18th day of July, 2016, by regular U.S. Mail, postage prepaid, or electronically upon the following:

Joseph M Winchester, Debtor
815 Bagwell Blvd
Murray, KY 42071

Tamara L Winchester, Debtor
815 Bagwell Blvd
Murray, KY 42071

Steve Vidmer, Debtor`s Counsel
309A North 4th Street
Murray, KY 42071

William W. Lawrence -- 13, Bankruptcy Trustee
310 Republic Plaza
200 S. Seventh Street
Louisville, KY 40202

Charles R. Merrill
U.S. Trustee
601 West Broadway #512
Louisville, KY 40202

/s/ Martha R. Spaner
Martha R. Spaner

(Official Form 10) (12/11) LSR #BK1206286 Chapter 13

| United States Bankruptcy Court Western District of Kentucky | | PROOF OF CLAIM |
|---|---|---|
| Name of Debtor:<br>Joseph M Winchester<br>Tamara L Winchester | Case Number: 12-50676<br>Judge Fulton | |
| NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.* | | |
| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br><br>Bank of America, N.A | | COURT USE ONLY |
| Name and address where notices should be sent:<br><br>Bank of America, N.A<br>Bankruptcy Department<br>Mail Stop CA6-919-01-23<br>400 National Way<br>Simi Valley, CA. 93065<br><br>Telephone number: email: | | ☐ Check this box if this claim amends a previously filed claim.<br><br>**Court Claim Number:**<br>*(If known)*<br><br>Filed on: |
| Name and address where payment should be sent (if different from above):<br><br>Bank of America, N.A<br>P.O. Box 660933<br>Dallas, TX. 75266-0933<br><br>Telephone number: email: | | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars. |

1. **Amount of Claim as of Date Case Filed: $100,029.70**

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☒ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

2. Basis for Claim: Mortgage Note
(See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor: | 3a. Debtor may have scheduled account as: | 3b. Uniform Claim Identifier (optional): |
|---|---|---|
| 3893 | Bank of America<br>(See instruction #3a) | ______________________<br>(See instruction #3b) |

4. Secured Claim (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any: $ 8,024.53

Nature of property or right of setoff: ☒ Real Estate ☐ Motor Vehicle ☐ Other

Basis for perfection: Recorded Mortgage

Describe:
815 Bagwell Boulevard
Murray ,KY. 42071

Value of Property: $________

Amount of Secured Claim: $100,029.70

Annual Interest Rate: 6.375% ☒ Fixed or ☐ Variable
(when case was filed)

Amount Unsecured: $________

5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations Under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan -- 11 U.S.C. §507 (a)(5).

Amount entitled to priority:

$________________

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amounts are subject to adjustment on 4-1-13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

6. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

7. Documents: Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

8. Signature: (See instruction #8)

Check the appropriate box.

☐ I am the creditor.

☐ I am the creditor's authorized agent. (Attach copy of power of attorney, if any.)

☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)

☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Joel K Jensen
Title: Case Attorney
Company: LERNER, SAMPSON & ROTHFUSS
Address and telephone number (if different from notice address above):
PO Box 5480
Cincinnati, OH 45201-5480

/s/ Joel K. Jensen
Joel K. Jensen
Bar Registration #81820
/s/ ~~513-241-3100 x-3349~~ November 26, 2012
(Signature) (Date)

Telephone number: (513) 241-3100 email: wkybk@lsrlaw.com

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Case 12-50676-tnw Doc 36 Filed 07/18/16 Entered 07/18/16 08:56:27 Page 6 of 32

B 10 (Attachment A) (12/11)

# Mortgage Proof of Claim Attachment

If you file a claim secured by a security Interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See Bankruptcy Rule 3001 (c) (2).

Name of debtor: Joseph M Winchester
Tamara L Winchester

Case Number: 12-50676

Name of creditor: Bank of America, N.A

Last four digits of any number you use to identify the debtor's account: 3893

## Part 1: Statement of Principal and Interest Due as of the Petition Date

Itemize the principal and interest due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on your Proof of Claim form).

1. Principal due (1) $ 93,691.00

2. Interest due

| Interest rate | From mm/dd/yyyy | To mm/dd/yyyy | Amount |
|---|---|---|---|
| 6.375% | 10/1/2011 | 06/30/2012 | $4,479.57 |
| ____% | ______ | ______ | $______ |
| ____% | ______ | ______ | + $______ |

Total interest due as of the petition date $4,479.57 Copy total here (2) + $4,479.57

3. Total principal and Interest due (3) $98,170.57

## Part 2: Statement of Prepetition Fees, Expenses, and Charges

Itemize the fees, expenses, and charges due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on the Proof of Claim form).

| Description | Dates Incurred | | Amount |
|---|---|---|---|
| 1. Late charges: | 04/27/2011, 01/11/2011, 10/15/2010, 07/07/2010 at $32.22 each<br>02/26/2010, 04/21/2010 at $31.76<br>11/13/2009 at $31.32<br>06/14/2010 at $49.30 | (1) | $237.02 |
| 2. Non-sufficient funds (NSF) fees | ______ | (2) | $______ |
| 3. Attorney's fees | ______ | (3) | $______ |
| 4. Filing fees and court costs | ______ | (4) | $______ |
| 5. Advertisement costs | ______ | (5) | $______ |
| 6. Sheriff/auctioneer fees | ______ | (6) | $______ |
| 7. Title costs | 07/12/2012 | (7) | $270.00 |
| 8. Recording fees | ______ | (8) | $______ |
| 9. Appraisal/broker's price opinion fees | ______ | (9) | $______ |
| 10. Property Inspection fees | 03/03/2010 | (10) | $15.00 |
| 11. Tax advances (non-escrow) | ______ | (11) | $______ |
| 12. Insurance advances (non-escrow) | ______ | (12) | $______ |
| 13. Escrow shortage or deficiency (Do not include amounts that are part of any installment payment listed in Part 3.) | ______ | (13) | $120.80 |
| 14. Property preservation expenses. Specify: | ______ | (14) | $______ |
| 15. Total prepetition fees, expenses, and charges. Add all of the amounts listed above. | | (15) + | $642.82 |

B 10 (Attachment A) (12/11)

## Part 3: Statement of Amount Necessary to Cure Default as of the Petition Date

Does the Installment payment amount include an escrow deposit?

☐ No

☒ Yes. Attach to the Proof of Claim form an escrow account statement prepared as of the petition date in a form consistent with applicable nonbankruptcy law.

---

| | | | | |
|---|---|---|---|---|
| 1. Installment payments due | Date last payment received by creditor | 06/18/2012 | | |
| | Number of installment payments due | (1) 9 | | |
| 2. Amount of Installment payments due | 9 Installments 11/1/2011 - 7/1/2012 @ 820.19 | $7,381.71 + | | |
| | Total installment payments due as of the petition date | $7,381.71 | Copy total here (2) | $ 7,381.71 |
| 3. Calculation of cure amount | Add total prepetition fees, expenses, and charges. | Copy total from | Part 2 here | +$642.82 |
| | Subtract total of unapplied funds (funds received but not credited to account) | | | - $0.00 |
| | Subtract amounts for which debtor is entitled to a refund | | | - $______ |
| | Total amount necessary to cure default as of the petition date | | | (3) $ 8,024.53 |

Copy total onto Item 4 of Proof of Claim form

First Post-Petition Payment due 08/01/2012 in the amount of $825.76

| | |
|---|---|
| Principal and interest | $611.06 |
| Escrow | $214.70 |

Bank of America, N.A. services the loan on the property referenced in this proof of claim. In the event the automatic stay in this case is modified, this case dismisses, and/or the debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of BANK OF AMERICA, N.A."NOTEHOLDER".

Note holder, directly or through an agent, has possession of the promissory note. The promissory note is either made payable to Note holder or has been duly endorsed.

**Bank of America**
Home Loans

Customer Service
PO Box 5170
Simi Valley, CA 93062-5170

**Notice date:** 08/03/2012
[redacted]
**Property address:**
815 Bagwell Blvd
Murray, KY 42071

[redacted]
TAMARA WINCHESTER
815 Bagwell Ave
Murray KY 42071-3057
[redacted]

## IMPORTANT MESSAGE ABOUT YOUR LOAN

Enclosed is an escrow analysis for your loan. The purpose of this notification is to advise you that the escrow portion of your payment is changing to $214.70 effective August 01, 2012.

## WHAT THIS MEANS

This notification is for informational purposes only. Your next statement will arrive shortly. It will provide a payment coupon and will include the new escrow payment amount of $214.70.

## ADDITIONAL INFORMATION

| | |
|---|---|
| Principal Balance | $93,691.00 |
| Home loan payment due 09/01/2012 | $825.76 |

This informational notice is being sent to the following borrowers at address set forth above in reference to the Chapter 13 Bankruptcy filing: JOSEPH WINCHESTER, TAMARA WINCHESTER

## WHAT YOU NEED TO DO

Please keep this notification for your records.

## THANK YOU FOR YOUR BUSINESS

For additional information regarding your escrow analysis, or any other account details, call 1.800.669.5224, Monday-Friday 7a.m. - 7p.m. Local Time. The address for general inquiries and all RESPA Qualified Written Requests is: Bank of America, N.A., Attn: Customer Service CA6-919-01-41, PO Box 5170, Simi Valley, CA 93062-5170.

Bank of America, N.A. Member FDIC. Equal Housing Lender. © 2012 Bank of America Corporation. Trademarks are the property of Bank of America Corporation. All rights reserved.

[redacted]



**Bank of America**

Home Loans

Statement date
08/03/2012

Property address
815 Bagwell Blvd

Joseph Winchester
Tamara Winchester

## Escrow Account Review

**ESCROW EXPLAINED**

Part of your monthly loan payment goes into an account to pay for your property taxes and insurance premiums. During the year, payments are made out of this account when bills come due. This notice describes any changes needed in your monthly payment to maintain enough money in your escrow account to pay these bills. In our step-by-step analysis, we determine the data shown below to calculate your new escrow payment.

*See below for:*
- an in-depth explanation of each step of your escrow analysis
- side-by-side comparison of last year's projected and actual data

**SUMMARY**

| | | |
|---|---|---|
| Base amount needed *(see Step 1)* | The expected monthly amount needed to pay your property taxes and insurance premiums | $214.70 |
| Shortage payment *(see Step 2)* | **The monthly amount you must pay into your escrow account to keep the balance from falling below zero during the year** | $0.00 |
| Reserve requirement *(see Step 3)* | The monthly amount allowed by federal law for unexpected tax and insurance increases and other costs | $0.00 |
| **New monthly escrow payment** *(see Step 4)* | | **$214.70** |
| **New monthly home loan payment effective 08/2012** *(see Step 4)* | | **$825.76** |

## HOW WE CALCULATE YOUR ESCROW PAYMENT

**STEP 1** **Determine base amount needed for the year**

| *Escrow items* | *Amount needed* | *Frequency in months* | *Monthly amount needed* | |
|---|---|---|---|---|
| Homeowners insurance | $925.26 | 12 | $77.11 | |
| County taxes | 307.14 | 12 | 25.60 | |
| FHA MIP | 37.91 | 1 | 37.91 | |
| City taxes | 889.09 | 12 | 74.09 | |
| **Total monthly base payment amount** | | | | **$214.70** |

**STEP 2** **Determine lowest projected balance**

In the chart located below, we project the amounts you will pay into your escrow account next year and the amounts we will pay out for your insurance and tax bills. Remember, these figures are only projections and may not reflect the actual payments made at the time they are due.

| *Month* | *Escrow deposit(s)* | *Tax payment(s)* | *Insurance payment(s)* | *MIP/PMI payment(s)* | *Balance* |
|---|---|---|---|---|---|
| **Beginning balance** | | | | | **$545.06 D** |
| August 2012 | 214.70 | | | 37.91 | 721.85 |
| September 2012 | 214.70 | | | 37.91 | 898.64 |
| October 2012 | 214.70 | 1,196.23 | | 37.91 | -120.80 * |
| November 2012 | 214.70 | | | 37.91 | 55.99 |
| December 2012 | 214.70 | | | 37.91 | 232.78 |
| January 2013 | 214.70 | | | 37.91 | 409.57 |
| February 2013 | 214.70 | | | 37.91 | 586.36 |
| March 2013 | 214.70 | | | 37.91 | 763.15 |
| April 2013 | 214.70 | | | 37.91 | 939.94 |
| May 2013 | 214.70 | | 925.26 | 37.91 | 191.47 |
| June 2013 | 214.70 | | | 37.91 | 368.26 |
| July 2013 | 214.70 | | | 37.91 | 545.05 |
| **Ending balance** | | | | | **$545.05** |

**Lowest projected balance** **-$120.80**
**Shortage payment amount** **$0.00**

* Lowest projected balance (LPB)

D-The letter (D) beside the escrow balance amount indicates that your mortgage payments are delinquent, and the Beginning balance from Step 2 of HOW WE CALCULATE YOUR ESCROW PAYMENT will not match the Actual Ending balance from the LAST YEAR IN REVIEW section.

At the time of analysis, Bank of America, N.A. assumes that all scheduled mortgage payments will be made to the effective date of your new payment.

Your Lowest Projected Balance (LPB) reflects a balance above zero. In the next step, we will compare this amount to your escrow reserve requirement to determine if there is an overage.

**STEP 3** **Determine reserve requirement**

Federal law allows for the collection of a reserve amount to maintain a cushion for unexpected tax and/or insurance increases and other costs. The reserve used for this period is shown below.

| | | |
|---|---|---|
| Lowest projected balance *(see step 2 above)* | -$120.80 | |
| Total reserve requirement (00.0% of the base amount) * | .00 | |
| Additional amounts required | .00 | |
| **Monthly reserve requirement ($0.00 divided by 12)** | | **$0.00** |
| **Available overage** | **$0.00** | |

* Base amount equals the total of payments anticipated to be paid out of the escrow account during the year but excludes PMI/MIP amounts.

Bank of America, N.A. Member FDIC. Equal Housing Lender. © 2012 Bank of America Corporation. Trademarks are the property of Bank of America Corporation. All rights reserve '

**STEP 4** **Determine monthly payments**

**Calculation of monthly escrow payment**

| | | |
|---|---|---|
| Base amount needed for taxes and/or insurance *(see Step 1)* | $214.70 | |
| Shortage payment *(see Step 2)* | .00 | |
| Reserve requirement *(see Step 3)* | .00 | |
| **Total monthly escrow payment** | | **$214.70** |

**Calculation of monthly home loan payment**

| | | |
|---|---|---|
| Principal and/or interest | $611.06 | |
| Total monthly escrow payment | 214.70 | |
| **Total monthly home loan payment effective 08/2012** | | **$825.76** |

## LAST YEAR IN REVIEW

**Current analysis compared to previous**

| *Amount needed for taxes and insurance* | *Monthly amount* — *Last analysis* | *This analysis* |
|---|---|---|
| Homeowners insurance | $64.43 | $77.11 |
| County taxes | 25.60 | 25.60 |
| FHA MIP | 37.91 | 37.91 |
| City taxes | 74.09 | 74.09 |
| Total base escrow payment | $202.02 | $214.70 |
| Shortage payment | 3.77 | .00 |
| Reserve requirement | .00 | .00 |
| Rounding amount | .00 | .00 |
| **Monthly escrow payment** | **$205.79** | **$214.70** |
| Principal and/or interest | $611.06 | $611.06 |
| Monthly escrow payment | 205.79 | 214.70 |
| **Total payment amount** | **$816.85** | **$825.76** |

**Summary of escrow change**

As shown, your base escrow amount increased. Your reserve percentage remained unchanged. Your reserve payment remained unchanged. The result of these issues caused your total escrow payment to increase.

A side-by-side comparison of last year's projected escrow account activity and actual activity can be found below.

**Last year's escrow payments**

***Projected***

| *Date* | *Activity* | *Paid in* | *Paid out* | *Balance* |
|---|---|---|---|---|
| | **Beginning balance** | | | **$1,141.51** |
| 05/02/2012 | Homeowners insurance | | 773.12 | 368.39 |
| 05/02/2012 | FHA MIP | | 37.91 | 330.48 |
| 06/01/2012 | Jun Payment | 205.79 | | 536.27 |
| 06/02/2012 | FHA MIP | | 37.91 | 498.36 |
| 07/01/2012 | Jul Payment | 205.79 | | 704.15 |
| 07/02/2012 | FHA MIP | | 37.91 | 666.24 |
| 08/01/2012 | Aug Payment | 205.79 | | 872.03 |
| 08/02/2012 | FHA MIP | | 37.91 | 834.12 |
| 09/01/2012 | Sep Payment | 205.79 | | 1,039.91 |
| 09/02/2012 | FHA MIP | | 37.91 | 1,002.00 |
| 10/01/2012 | Oct Payment | 205.79 | | 1,207.79 |
| 10/02/2012 | FHA MIP | | 37.91 | 1,169.88 |
| 10/02/2012 | County taxes | | 307.14 | 862.74 |
| 10/02/2012 | City taxes | | 889.09 | -26.35 * |
| 11/01/2012 | Nov Payment | 205.79 | | 179.44 |
| 11/02/2012 | FHA MIP | | 37.91 | 141.53 |
| 12/01/2012 | Dec Payment | 205.79 | | 347.32 |
| 12/02/2012 | FHA MIP | | 37.91 | 309.41 |
| 01/01/2013 | Jan Payment | 205.79 | | 515.20 |
| 01/02/2013 | FHA MIP | | 37.91 | 477.29 |
| 02/01/2013 | Feb Payment | 205.79 | | 683.08 |
| 02/02/2013 | FHA MIP | | 37.91 | 645.17 |
| 03/01/2013 | Mar Payment | 205.79 | | 850.96 |
| 03/02/2013 | FHA MIP | | 37.91 | 813.05 |
| 04/01/2013 | Apr Payment | 205.79 | | 1,018.84 |
| 04/02/2013 | FHA MIP | | 37.91 | 980.93 |
| 05/01/2013 | May Payment | 205.79 | | 1,186.72 |
| 05/02/2013 | Homeowners insurance | | 773.12 | 413.60 |
| 05/02/2013 | FHA MIP | | 37.91 | 375.69 |
| | **Ending balance** | | | **$375.69** |

***Actual***

| *Date* | *Activity* | *Paid in* | *Paid out* | *Balance* |
|---|---|---|---|---|
| | **Beginning balance** | | | **-$1,458.28** |
| 06/06/2012 | FHA MIP payment | | 37.91 | -1,496.19 * |
| 06/18/2012 | Oct Payment | 196.99 | | -1,299.20 |
| 07/06/2012 | FHA MIP payment | | 37.91 | -1,337.11 |
| | **Ending balance** | | | **-$1,337.11** D |

* Lowest projected balance

D - The letter (D) beside the escrow balance amount indicates that your mortgage payments are delinquent, and the Beginning balance from Step 2 of HOW WE CALCULATE YOUR ESCROW PAYMENT will not match the Actual Ending Balance from the LAST YEAR IN REVIEW section.

At the time of analysis, Bank of America, N.A. assumes that all scheduled mortgage payments will be made to the effective date of your new payment.

# NOTE

[redacted]

March 07, 2008
[Date]

815 Bagwell Blvd
Murray, KY 42071
[Property Address]

1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means Taylor, Bean & Whitaker Mortgage Corp.

and its successors and assigns.

2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of Ninety Seven Thousand Nine Hundred Forty Seven and no/100 Dollars (U.S. $97,947.00 ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of Six and Three Eighths percent ( 6.3750%) per year until the full amount of principal has been paid.

3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

4. MANNER OF PAYMENT

(A) Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on May 01, 2008 . Any principal and interest remaining on the first day of April 2038 , will be due on that date, which is called the "Maturity Date."

(B) Place

Payment shall be made at Taylor, Bean & Whitaker Mortgage Corp., 1417 North Magnolia Ave, Ocala, FL 34475 or at such other place as Lender may designate in writing by notice to Borrower.

(C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. $611.06 . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.



[redacted]

[redacted]

**(D) Allonge to this Note for Payment Adjustments**

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. (Check applicable box.)

☐ Growing Equity Allonge ☐ Graduated Payment Allonge

☐ Other [specify]

**5. BORROWER'S RIGHT TO PREPAY**

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

**6. BORROWER'S FAILURE TO PAY**

**(A) Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of Four percent ( 4%) of the overdue amount of each payment.

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay $500.00 for costs and expenses for enforcing this Note. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7. WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 3 of this Note.

Joseph Mark Winchester (Seal) -Borrower

Tamara Winchester (Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

*[Sign Original Only]*

**Without recourse, pay to the order of**

**By: Taylor, Bean & Whitaker Mortgage Corp.**

**Erla Carter-Shaw, E.V.P.**

RETURN TO:
LANDSTAR TITLE, LLC
7365 E. KEMPER RD. SUITE B
CINCINNATI, OH 45249

BK 741 × 191

RECEIVED
CALLOWAY COUNTY CLERK
RAY G. COURSEY JR.
2008 APR 25 AM 11 11

000191

After Recording Return To:
LANDSTAR TITLE, LLC
215 THOMAS MORE PARKWAY, UNIT, UNIT 2
CRESTVIEW HILLS , KY 41017

FILED FOR RECORD THIS 25 DAY OF APR 08 AT 11:11 O'CLOCK A M
RECORDED IN BOOK 741 PAGE 191
RAY G. COURSEY JR., CLERK CALLOWAY CO
BY [signature] D.C.

[redacted]

[Space Above This Line For Recording Data]

# MORTGAGE

FHA CASE NO. [redacted]

MIN: [redacted]

THIS MORTGAGE ("Security Instrument") is given on March 07, 2008. The mortgagor is **Joseph Mark Winchester and Tamara Winchester and Husband and Wife, As Joint Tenants** ("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS"). MERS is a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. **Taylor, Bean & Whitaker Mortgage Corp.** ("Lender") is organized and existing under the laws of **FL**, and has an address of **1417 North Magnolia Ave, Ocala, FL 34475**

Borrower owes Lender the principal sum of **Ninety Seven Thousand Nine Hundred Forty Seven and no/100** Dollars (U.S. $ **97,947.00** ). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **April 01, 2038**. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in **Calloway** County, Kentucky:



[redacted]

JMW TW

[redacted]

000192

See Attached Exhibit A.

which has the address of 815 Bagwell Blvd [Street]

Murray [City], Kentucky 42071 [Zip Code] ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.



JMR
JW

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

THIRD, to interest due under the Note;

FOURTH, to amortization of the principal of the Note; and

FIFTH, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

Case 12-50676-thf Doc 87 Filed 07/13/16 Entered 07/18/16 08:56:21 Page 18 of 32



7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within **eight months** from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to **eight months** from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure



JMW JW

proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.



JMW
JW

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. **Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

19. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

20. **Waiver of Homestead.** Borrower waives all right of homestead exemption in the Property.

21. **Protective Advances.** This Security Instrument secures not only the initial advance under the Note, but also all Protective Advances. "Protective Advances" mean any advances to maintain and protect the Property and/or protect Lender's rights in the Property made by Lender or by any successors or assigns of Lender, including, without limitation, any sums, with interest, advanced under Sections 5, 9, or 14 hereof: (a) to pay any Escrow Items; (b) to pay any sums secured by a lien or encumbrance on the Property without which payment the secured position of Lender, including the priority of this Security Instrument, or any successor or assign of Lender might be jeopardized; (c) to secure, repair, maintain, protect or preserve the Property, or Lender's interest in the Property and rights under this Security Instrument; or (d) to pay any and all expenses incident to the collection of the indebtedness secured by this Security Instrument and the foreclosure thereof by judicial proceedings, or otherwise, pursuant to applicable law, whether the Property is still owned by the Borrower or is owned by a Successor in Interest of Borrower.

To the extent that any Protective Advances are deemed to be "future advances" or "additional indebtedness" within the meaning of KRS 382.520, this Security Instrument secures such future advances or additional indebtedness, provided that the total indebtedness at any one time outstanding shall not exceed 150% of the original principal amount of the Note, with interest thereon, and whether or not evidenced by notes, accounts or obligations of any kind whatsoever. It shall be a default under this Security Instrument if Borrower requests a release, in the manner provided by KRS 382.520, of any portion of the lien securing any of the additional indebtedness secured by this Security Instrument pursuant to KRS 382.520 prior to the date that all of the obligations secured by this Security Instrument have been paid and discharged and the Note and this Security Instrument have been terminated, and Borrower hereby waives any and all right to request such a release to the maximum extent permitted by applicable law.

22. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)].

☐ Condominium Rider ☐ Graduated Payment Rider ☐ Growing Equity Rider

☐ Planned Unit Development Rider ☐ Adjustable Rate Rider ☐ Rehabilitation Loan Rider

☐ Non-Owner Occupancy Rider ☐ Other [Specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 8 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

| | |
|---|---|
| Joseph Mark Winchester (Seal) -Borrower | Tamara Winchester (Seal) -Borrower |
| (Seal) -Borrower | (Seal) -Borrower |
| (Seal) -Borrower | (Seal) -Borrower |

Witness: ______________________

Witness: ______________________

State of Kentucky
County of Calloway

The foregoing instrument was acknowledged before me this 7, March, 2008 (date) by Joseph Mark Winchester and Tamara Winchester (person[s] acknowledged).

NATALIE DAVIS
Notary Public
State at Large
Kentucky
My Commission Expires Jun 13, 2011

Natalie Davis
Notary Public

My commission expires: 6-13-2011

This instrument was prepared by:

~~Name: TBDocs~~
~~Address: Taylor, Bean & Whitaker Mortgage Corp.~~
~~1417 North Magnolia Ave~~
~~Ocala, FL 34475~~

PREPARED BY:
Landstar Title, LLC
7385 E. Kemper Rd. Suite B
Cincinnati, OH 45249

Signature of Preparer: Jay A. Rosenberg
Jay A. Rosenberg



JMW TW

File Number: [redacted]
Parcel Number:008-0-0024-00001

Exhibit A

Lot No. 1 (one), Block G, of the Bagwell Manor Sudivision, to the Town of Murray, Kentucky as shown by revised plat of record in Plat Book 2, Page 39 in the Office of the Clerk of Calloway County Court.

Subject to all easements and restrictions of record.

More Commonly Known As:
815 Bagwell Blvd. Murray. KY 42071

B 894 / 622

000622

DATE 10-17-11
TIME 12:13 PM
BK 894 PG 622
RAY C. COURSEY JR. CLERK
CALLOWAY CO

Recording Requested By:
**Bank of America**

Prepared By: **Rene Rosales**
**888-603-9011**
**450 E. Boundary St.**
**Chapin, SC 29036**
When recorded mail to:
**CoreLogic**
**450 E. Boundary St.**
**Attn: Release Dept.**
[redacted]
DocID# [redacted]
GroupNumber: N/A
Property Address:
**815 Bagwell Ave**
**Murray, KY 42071-3057**
[redacted]

This space for

MIN #: [redacted]

## ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is **3300 S.W. 34th Avenue, Suite 101 Ocala, FL 34474** does hereby grant, sell, assign, transfer and convey unto **BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP** whose address is **451 7TH ST.SW #B-133, WASHINGTON DC 20410** all beneficial interest under that certain Mortgage described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Mortgage.

| | |
|---|---|
| Original Lender: | **TAYLOR, BEAN & WHITAKER MORTGAGE CORP.** |
| Borrower(s) | **JOSEPH MARK WINCHESTER AND TAMARA WINCHESTER AND HUSBAND AND WIFE, AS JOINT TENANTS** |
| Date of Mortgage: | **3/7/2008** |
| Original Loan Amount: | **$97,947.00** |

Recorded in **Calloway County, KY** on: **4/25/2008**, book **741**, page **191** and instrument number **N/A**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on 09/26/11

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**

By: ______________________
Edward Gallegos Assistant Secretary

**Witness:** Richard Paz

**State of California**
**County of Ventura**

On Sept. 26 2011 before me, Dee Ann Westfall Cortes, Notary Public, personally appeared Edward Gallegos, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/~~are~~ subscribed to the within instrument and acknowledged to me that he/~~she/they~~ executed the same in his/~~her/their~~ authorized capacity(ies), and that by his/~~her/their~~ signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

Notary Public: Dee Ann Westfall Cortes

My Commission Expires: DAWC

(Seal)

DEE ANN WESTFALL CORTES
Notary Public - California
Los Angeles County
My Comm. Expires Jul 1, 2012

DocID# [redacted]

[redacted]

546880
Filed on: 10/.7/2011 12:13:00 PM
Book: [illegible] Number: [illegible]
Page: 622
Kay Coursey, Calloway County
DC: Antonia D. Faulkner

Corporations Section
P.O.Box 13697
Austin, Texas 78711-3697

Hope Andrade
Secretary of State

# Office of the Secretary of State

## CERTIFICATE OF MERGER

The undersigned, as Secretary of State of Texas, hereby certifies that a filing instrument merging

BAC Home Loans Servicing, LP
Domestic Limited Partnership (LP)
[File Number: 13186910]

Into

Bank of America, National Association
Other Entity/Organization
USA
[Entity not of Record, Filing Number Not Available]

has been received in this office and has been found to conform to law.

Accordingly, the undersigned, as Secretary of State, and by the virtue of the authority vested in the secretary by law, hereby issues this certificate evidencing the acceptance and filing of the merger on the date shown below.

Dated: 06/28/2011

Effective: 07/01/2011

Hope Andrade
Secretary of State

Form 622
(Revised 12/08)
Return in duplicate to:
Secretary of State
P.O. Box 13697
Austin, TX 78711-3697
512 463-5555
FAX: 512 463-5709
Filing Fee: see instructions

**Certificate of Merger**
**Combination Merger**
**Business Organizations Code**

This space reserved for office use.

FILED
In the Office of the
Secretary of State of Texas
JUN 28 2011
Corporations Section

## Parties to the Merger

Pursuant to chapter 10 of the Texas Business Organizations Code, and the title applicable to each domestic filing entity identified below, the undersigned parties submit this certificate of merger.

The name, organizational form, state of incorporation or organization, and file number, if any, issued by the secretary of state for each organization that is a party to the merger are as follows:

Party 1

BAC Home Loans Servicing, LP
*Name of Organization*

The organization is a: limited partnership *Specify organizational form (e.g., for-profit corporation)* It is organized under the laws of

Texas *State* USA *Country* The file number, if any, is: 13186910 *Texas Secretary of State file number*

Its principal place of business is 6400 Legacy Drive *Address* Plano *City* TX *State*

☐ The organization will survive the merger. ☒ The organization will not survive the merger.

☐ The plan of merger amends the name of the organization. The new name is set forth below.

____________________
*Name as Amended*

Party 2

Bank of America, National Association
*Name of Organization*

The organization is a national banking association *Specify organizational form (e.g., for-profit corporation)* It is organized under the laws of

*State* United States *Country* The file number, if any, is: 0000000132 *Texas Secretary of State file number*

Its principal place of business is 101 South Tryon Street *Address* Charlotte *City* NC *State*

☒ The organization will survive the merger. ☐ The organization will not survive the merger.

☐ The plan of merger amends the name of the organization. The new name is set forth below.

____________________
*Name as Amended*

Party 3

____________________
*Name of Organization*

The organization is a __________ *Specify organizational form (e.g., for-profit corporation)* It is organized under the laws of



TX150BOC - 01/02/2009 C T System Online

_______________ The file number, if any, is _______________
*State* *Country* *Texas Secretary of State file number*

Its principal place of business is _______________
*Address* *City* *State*

☐ The organization will survive the merger. ☐ The organization will not survive the merger.

☐ The plan of merger amends the name of the organization. The new name is set forth below.

_______________
*Name as Amended*

**Plan of Merger**

☐ The plan of merger is attached.

*If the plan of merger is not attached, the following statements must be completed.*

**Alternative Statements**

In lieu of providing the plan of merger, each domestic filing entity certifies that:

1. A signed plan of merger is on file at the principal place of business of each surviving, acquiring, or new domestic entity or non-code organization that is named in this form as a party to the merger or an organization created by the merger.

2. On written request, a copy of the plan of merger will be furnished without cost by each surviving, acquiring, or new domestic entity or non-code organization to any owner or member of any domestic entity that is a party to or created by the plan of merger and, if the certificate of merger identifies multiple surviving domestic entities or non-code organizations, to any creditor or oblige of the parties to the merger at the time of the merger if a liability or obligation is then outstanding.

*Complete item 3B if the merger effected changes to the certificate of formation of a surviving filing entity.*

3A. No amendments to the certificate of formation of any surviving filing entity that is a party to the merger are effected by the merger.

3B. ☐ The plan of merger effected changes or amendments to the certificate of formation of:

_______________
*Name of filing entity effecting amendments*

The changes or amendments to the filing entity's certificate of formation, other than the name change noted previously, are stated below.

*Amendment Text Area*

| |
|---|
| |

4. Organizations Created by Merger

The name, jurisdiction of organization, principal place of business address, and entity description of each entity or other organization to be created pursuant to the plan of merger are set forth below. The certificate of formation of each new domestic filing entity to be created is being filed with this certificate of merger.

| | | |
|---|---|---|
| *Name of New Organization 1* | *Jurisdiction* | *Entity Type (See instructions)* |
| *Principal Place of Business Address* | *City* | *State Zip Code* |
| *Name of New Organization 2* | *Jurisdiction* | *Entity Type (See instructions)* |
| *Principal Place of Business Address* | *City* | *State Zip Code* |
| *Name of New Organization 3* | *Jurisdiction* | *Entity Type (See instructions)* |
| *Principal Place of Business Address* | *City* | *State Zip* |

**Approval of the Plan of Merger**

The plan of merger has been approved as required by the laws of the jurisdiction of formation of each organization that is a party to the merger and by the governing documents of those organizations.

☐ The approval of the owners or members of ______________________________
*Name of domestic entity*
was not required by the provisions of the BOC.

**Effectiveness of Filing** (Select either A, B, or C)

A. ☐ This document becomes effective when the document is accepted and filed by the secretary of state.

B. ☒ This document becomes effective at a later date, which is not more than ninety (90) days from the date of signing. The delayed effective date is: July 1, 2011

C. ☐ This document takes effect on the occurrence of the future event or fact, other than the passage of time. The 90th day after the date of signing is: ______________________

The following event or fact will cause the document to take effect in the manner described below:

______________________________________________

______________________________________________

**Tax Certificate**

☐ Attached hereto is a certificate from the comptroller of public accounts that all taxes under title 2, Tax Code, have been paid by the non-surviving filing entity.

☒ In lieu of providing the tax certificate, one or more of the surviving, acquiring or newly created organizations will be liable for the payment of the required franchise taxes.

**Execution**

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument. The undersigned certifies that the statements contained herein are true and correct, and that the person signing is authorized under the provisions of the Business Organizations Code, or other law applicable to and governing the merging entity, to execute the filing instrument.

Date: 06/28/2011

BAC Home Loans Servicing, LP
Merging Entity Name

[signature]
Signature of authorized person (see instructions)

Tim Huval, President and CEO, BAC GP, LLC, General Partner
Printed or typed name of authorized person

Bank of America, National Association
Merging Entity Name

MERRILY S. GERRISH
Signature of authorized person (see instructions)

Merrily Gerrish, Associate General Counsel, Assistant Secretary
Printed or typed name of authorized person

Merging Entity Name

Signature of authorized person (see instructions)

Printed or typed name of authorized person

DATE 12-16-14
TIME 9:49 AM
BK 1034 PG 426
ANTONIA D. FAULKNER CLERK
CALLOWAY CO.

0426

Recording Requested By:
Bank of America, N.A.

Prepared By: Diana De Avila
800-444-4302
1800 Tapo Canyon Road
Simi Valley, CA 93063
When recorded mail to:
7316 Southmore
Pasadena, TX 77502
713 941-4928
South
[redacted]

GroupNumber: N/A
Property Address:
815 Bagwell Blvd
Murray, KY 42071
[redacted]

This space for Recorder's use

# ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is **1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063** does hereby grant, sell, assign, transfer and convey unto **SELENE FINANCE LP** whose address is **9990 RICHMOND AVE SUITE 400 SOUTH, HOUSTON, TX 77042** all beneficial interest under that certain Mortgage described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Mortgage.

| | |
|---|---|
| Beneficiary: | **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR TAYLOR, BEAN & WHITAKER MORTGAGE CORP., ITS SUCCESSORS AND ASSIGNS** |
| Borrower(s): | **JOSEPH MARK WINCHESTER AND TAMARA WINCHESTER AND HUSBAND AND WIFE, AS JOINT TENANS** |
| Date of Mortgage: | **3/7/2008** |
| Original Loan Amount: | **$97,947.00** |

Recorded in Calloway County, KY on: **4/25/2008**, book **741**, page **191** and instrument number **N/A**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on OCT 06 2014.

**BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP, FKA COUNTRYWIDE HOME LOANS SERVICING LP**

By: ______________________
Luis Roldan,
Assistant Vice President

Witness: ______________________
Amparo Mayorga

0427

State of California
County of Ventura

On OCT 06 2014 before me, Marivel Castro, Notary Public, personally appeared Luis Roldan, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

Notary Public: Marivel Castro (Seal)
My Commission Expires: Exp. June 26, 2018

MARIVEL CASTRO
[redacted]
NOTARY PUBLIC - CALIFORNIA
VENTURA COUNTY
My Comm. Expires June 26, 2018

[redacted]

[redacted]

Recorded on:12/16/2014 9:49:46 AM
Book: [illegible] Number: 1034
Pages: 426 - 427
Antonia D. Faulkner ,Calloway County
DC: RITA
Deed Tax:$0.00
Lisa Wilson